**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **NAIL ALLIANCE, LLC, a Delaware limited liability company, et al.**<br><br>**Plaintiff and Counterclaim Defendant,**<br><br>**v.**<br><br>**POLY-GEL, L.L.C., a New Jersey limited liability company; and DOES 1 through 100, inclusive,**<br><br>**Defendants and Counterclaim Plaintiff.** | ) | **Case No. 4:17-cv-01026-FJG** |

**PLAINTIFF / COUNTERCLAIMANT-DEFENDANTS NAIL ALLIANCE, LLC AND HAND AND NAIL HARMONY, INC.'S SUGGESTIONS IN SUPPORT OF THEIR MOTION TO DECLARE CASE EXCEPTIONAL AND TO AWARD ATTORNEY FEES AND EXPERT COSTS**

## TABLE OF CONTENTS

I. LEGAL STANDARD .......... 2

II. ARGUMENT .......... 3

A. Poly-Gel asserted and re-asserted Lanham Act claims knowing it had no evidence to support its claims .......... 3

1. Superior trademark rights .......... 4

2. A substantial likelihood of confusion .......... 4

3. Poly-Gel had no evidence of damages .......... 6

4. Poly-Gel refused to drop its Lanham Act claims .......... 7

a. Nail Alliance offered Poly-Gel an Offer of Judgment .......... 9

5. Poly-Gel took unreasonable positions during litigation .......... 10

B. Courts have awarded fees in similar situations .......... 11

C. The fees sought are reasonable .......... 13

III. CONCLUSION .......... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*B&B Hardware, Inc. v. Hargis, Indus., Inc.*,
912 F.3d 445 (8th Cir. 2018) ........................................................................2, 3

*Bryant v. Jeffrey Sand Co.*,
919 F.3d 520 (8th Cir. 2019) ........................................................................13

*Childress v. Fox Assocs., LLC Childress*,
932 F.3d 1165 (8th Cir. 2019) ........................................................................13

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*,
No. 13-21604-CIV, 2017 WL 3610583 (S.D. Fla. Aug. 11, 2017) ..................................11, 12

*Hartman v. Hallmark Cards, Inc.*,
833 F.2d 117 (8th Cir. 1987) ........................................................................2

*Healthmate Int'l, LLC v. French*,
No. 15-0761-CV-W-BP, 2017 WL 4987651 (W.D. Mo. Oct. 31, 2017) ..................................3

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
811 F.3d 479 (Fed. Cir. 2016)........................................................................13

*Moore v. James H. Matthews & Co.*,
682 F.2d 830 (9th Cir. 1982) ........................................................................13

*Mountain Mktg. Grp., LLC v. Heimerl & Lammers, LLC*,
No. 14-CV-846, 2016 WL 2901735 (D. Minn. May 18, 2016)................................................3

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545, 134 S.Ct. 1749, 188 L.Ed.2d 816 (2014)......................................................2, 3

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010)........................................................13

*Romag Fasteners, Inc. v. Fossil, Inc.*,
866 F.3d. 1330 (Fed. Cir. 2017)........................................................................2

*Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*,
908 F.3d 313 (8th Cir. 2018) ........................................................................2

**Statutes**

15 U.S.C. § 1117(a) ....................................................................................................1, 2, 7

35 U.S.C. § 285 of the Patent Act.......................................................................................2

Lanham Act.............................................................................................................. *passim*

Patent Act..............................................................................................................................2

**Other Authorities**

Rule 26.............................................................................................................................6, 8

Plaintiff / Counterclaimant-Defendants Nail Alliance, LLC and Hand and Nail Harmony, Inc. (hereafter, collectively "Nail Alliance"), pursuant to 15 U.S.C. § 1117(a) and the Court's inherent powers, file this motion seeking the Court to declare this matter an exceptional case and to award Nail Alliance its attorney fees and expert costs.

Poly-Gel filed its Lanham Act claim knowing it could not meet any of the required factors for which it bore the burden of proof. At summary judgment, Poly-Gel did not offer any evidence to show it had superior trademark rights or had used the term Poly-Gel as a trademark or trade name. It did not offer any evidence of customer confusion beyond anecdotal instances which courts have rejected as evidence of customer confusion. It did not offer any evidence of damages, including lost profits.

Poly-Gel's decision to bring and to continue prosecution of its Lanham Act claims is and was unreasonable, and justifies an exceptional finding given the wide disparity in proof offered by the parties on each element of Poly-Gel's claims. This case is not one where Poly-Gel's evidence was simply insufficient and it was the losing party. Instead, Poly-Gel failed to present ***any*** evidence to support its claims at summary judgment on any essential element.

An exceptional finding is further justified because after months of discovery, Poly-Gel still knew it had no evidence to support its claims but (1) rejected an Offer of Judgment that would have allowed the parties to co-exist and ended the case; and (2) re-asserted at the close of discovery its Lanham Act claims in its Answer and Counterclaim to Nail Alliance's Second Amended Complaint. These actions, combined with specific examples of unreasonable conduct set out below, justify an exceptional finding and an award of attorney fees and expert costs.

## I. LEGAL STANDARD

Pursuant to 15 U.S.C. § 1117(a), the Court may award attorney fees to a prevailing party upon a finding that the case was exceptional. Historically, an exceptional case was one in which the losing party's claim was groundless, unreasonable, vexatious, or was pursued in bad faith. *B&B Hardware, Inc. v. Hargis , Indus., Inc.*, 912 F.3d 445, 454 (8th Cir. 2018); *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 123 (8th Cir. 1987). However, in 2014, the United States Supreme Court decided *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S.Ct. 1749, 188 L.Ed.2d 816 (2014). In that decision, the court applied a more lax standard for courts to make an exceptional case determination under 35 U.S.C. § 285 of the Patent Act. In determining whether to make an exceptional finding under *Octane Fitness*, there is no rigid standard that can be applied. Instead, the court should exercise its equitable discretion in making the determination. *Id.*, 134 S.Ct., at 1756. As the *Octane Fitness* court noted:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness*, 134 S. Ct. at 1756.

While *Octane Fitness* was decided in relation to exceptional cases under the Patent Act, the Federal Circuit has recognized that given the near identical statutory language in the Lanham Act and Patent Act regarding exceptional cases, the *Octane Fitness* standard applies equally to Lanham Act cases. *See, Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d. 1330, 1335 (Fed. Cir. 2017) (noting that the Third, Fourth, Fifth, Sixth and Ninth Circuits have all held that the *Octane Fitness* standard applies to the Lanham Act.). While the Eighth Circuit has not expressly ruled on the matter, it has cited to *Octane Fitness* when analyzing fee claims. *See, e.g.*, *Sturgis*

*Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 346 (8th Cir. 2018); *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 912 F.3d 445, 454 (8th Cir. 2018). Additionally, courts in the 8th Circuit have recognized the similarity of standards set forth in *Octane Fitness* and the Lanham Act. *See, e.g. Mountain Mktg. Grp., LLC v. Heimerl & Lammers, LLC*, No. 14-CV-846 (SRN/BRT), 2016 WL 2901735, at *3 (D. Minn. May 18, 2016) (Noting that the standard employed by *Octane Fitness* "is substantively similar to the one currently employed by the Eighth Circuit" for trademark cases."); *Healthmate Int'l, LLC v. French*, No. 15-0761-CV-W-BP, 2017 WL 4987651, at *2 (W.D. Mo. Oct. 31, 2017) (citing to *Octane Fitness* in analyzing a claim for an exceptional case).

## II. ARGUMENT

This matter is certainly a case that "that stands out from others with respect to the substantive strength of a party's litigating position." *Octane Fitness*, 134 S. Ct. at 1756. Poly-Gel lacked evidence to support its Lanham Act claims at the time it commenced this lawsuit, and did not produce any evidence to support its Lanham Act claims at summary judgment. It took unreasonable positions throughout the case and did all of this in the face of an offer of judgment where Nail Alliance specifically offered a path where the parties could co-exist in their respective marketplaces. Poly-Gel's actions forced the parties and the Court to press forward in litigation in which Poly-Gel knew it could not prevail. Accordingly, an exceptional case finding and award of attorney fees is justified.

### A. Poly-Gel asserted and re-asserted Lanham Act claims knowing it had no evidence to support its claims

Poly-Gel originally filed its Lanham Act counterclaims against Nail Alliance on March 12, 2018. *See* DE 28. As noted by the Court's Order granting summary judgment, for Poly-Gel to have succeeded on its Lanham Act claims it had to show (1) a superior trademark right in its

corporate name prior to Nail-Alliance's registered trademark rights in the POLY-GEL mark; (2) a substantial likelihood of confusion among customers; and (3) grounds for monetary or injunctive relief. DE 162, pg. 12, citing *First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th Cir. 1996). As the Court noted, Poly-Gel failed to produce any evidence on any of these essential elements.

**1. Superior trademark rights**

The Court found that Poly-Gel failed to produce evidence that Poly-Gel used POLY-GEL as a trademark or tradename as opposed to simply a business name. The Court noted that:

> Poly-Gel has provided no evidence that consumers are aware of Poly-Gel's corporate name or see it at the point of sale. Nor has Poly-Gel provided the Court with examples of trademark use of the name such as branded labeling used in the retail beauty product supply stores.

DE 162, pg. 14.

What was missing is evidence that Poly-Gel should have possessed (or recognized it did not possess) prior to instituting it Lanham Act claims. Poly-Gel was in sole possession of the information as to how and where it sells its products. It knew or should have known that an essential element of its proof would be to show customer awareness of its business name. When it filed its Lanham Act claims, Poly-Gel knew it did not possess any evidence on this required element – otherwise it would have produced it during discovery and summary judgment. This fact demonstrates that Poly-Gel's litigation of its Lanham Act claims was unreasonable.

**2. A substantial likelihood of confusion**

As the Court noted, the Eighth Circuit recognizes three general evidentiary routes to prove a substantial likelihood of confusion: (1) survey evidence; (2) evidence of actual confusion; and (3) argument based on an inference arising form a judicial comparison of the

conflicting marks and the context of their use in the marketplace. DE 162, pg. 14. Poly-Gel produced no evidence to support any of these paths to demonstrate customer confusion.

Poly-Gel failed to offer any survey evidence. In its Order granting summary judgment, the Court repeatedly noted Poly-Gel's failure to produce evidence – expert or otherwise – in support of its Lanham Act claims to show a likelihood of confusion:

- "Poly-Gel did not produce in discovery any direct survey evidence of any likelihood of confusion." DE 162, pg. 7. "Instead of producing survey evidence, Poly-Gel provides the Court with anecdotal stories about customer confusion."

- "Notably, the only survey evidence presented by the parties is Nail Alliance's expert report of Hal Poret, finding no likelihood of confusion…" DE 162, pg. 14.

- "Typically, plaintiffs present survey evidence to show that its mark is recognized by consumers." DE 162, pg. 14.

Poly-Gel also failed to produce any evidence of actual customer confusion. Instead, Poly-Gel offered anecdotal evidence of customers or vendors mistakenly contacting Poly-Gel which the Court correctly noted has been routinely rejected as evidence supporting a claim of customer confusion. DE 162, pg. 15.

Poly-Gel further failed to offer any evidence to support its customer confusion claim through judicial comparison. In addressing the six *Squirtco* factors the Court found that only *one factor* weighed in favor of Poly-Gel – the similarity of marks. DE 162, pgs. 16-21. And even that factor was found to only be "slightly" in favor of Poly-Gel. *Id.*, at 19.

In short, Poly-Gel asserted Lanham Act claims alleging a likelihood of confusion without any evidence. And, when Poly-Gel asserted its Lanham Act claims, Poly-Gel knew it had no evidence to show it had used POLY-GEL as a trademark or trade name. And it knew it had no

evidence to show actual confusion and it opted not to offer any survey evidence.[1] Poly-Gel's assertion and prosecution of its Lanham Act claim, knowing it did not have any evidence to prevail, is therefore unreasonable and justifies a finding that this case is exceptional.

**3. <u>Poly-Gel had no evidence of damages</u>**

Despite litigating this matter for months, Poly-Gel failed to produce any evidence of monetary damage. Poly-Gel did not produce any evidence of lost profits, a fact that was totally within its control. And most notably, Poly-Gel failed to produce any expert testimony as to its damages despite being granted an extension to do so.

Like with survey evidence, the absence of an expert report – or any evidence of damages – was noted repeatedly by this Court in its Order granting summary judgment:

- "Poly-Gel, although ostensibly seeking monetary relief, provided no expert report or other computation of monetary damages during the discovery period." DE 162, pg. 8.
- "Moreover, Poly-Gel has not provided an expert report or other documentation supporting the amount of monetary relief sought. Poly-Gel did not provide a computation of damages in its Rule 26 disclosures either." DE 162, pg. 22.
- "Poly-Gel has provided no calculation of damage or expert report support damages during discovery." DE 162, pg. 23.

When it filed its Lanham Act claims, Poly-Gel knew it had not suffered lost profits from the alleged infringement. It also knew it had no evidence of customer confusion that could possibly justify a willful infringement theory and disgorgement of Nail Alliance's profits. Nonetheless, Poly-Gel still filed its Lanham Act claims and prosecuted them through summary judgment where its lack of evidence was fully laid bare. Poly-Gel's assertion of claims it knew it could not support was unreasonable and the Court should therefore declare this case exceptional.

---

1 The unreasonable nature of Poly-Gel's actions is further demonstrated by the fact that on November 1, 2018, it submitted an expert report ***<u>responding</u>*** to Nail Alliance's expert, but did not submit any expert report to support its affirmative claims, even after moving for additional time to submit a report. DE 91-1.

Indeed, this case is not one where both sides put forth supported positions. If that were the case, then Poly-Gel would have been able to produce at least *some* evidence to support its Lanham Act claims, but it could not. Poly-Gel knew it had no evidence to support its Lanham Act claims and should have never asserted them. And as litigation continued, it should have withdrawn the claims once it knew it could or would not be able to produce evidence to support them. Poly-Gel's assertion and continued attempt to prosecute Lanham Act claims it knew it could not sustain, caused considerable expense and greatly increased the cost of litigation. The Court should therefore find this case exceptional under 15 U.S.C. § 1117(a) and award Nail Alliance its attorney fees and expert costs incurred in defending this matter.

#### 4. Poly-Gel refused to drop its Lanham Act claims

Not only did Poly-Gel initiate its Lanham Act claims knowing it had no proof, it also failed to re-evaluate its claims throughout the litigation. In fact, Poly-Gel had the opportunity to drop its claims at the close of discovery shortly before summary judgment, but instead chose to re-assert them in its counterclaim to Nail Alliance's Second Amended Complaint.

For example, on September 14, 2018 – the day it was to serve its expert reports – Poly-Gel moved for a 30 day extension of time in which to designate its experts. When it first approached Nail Alliance about the 30 day extension, Poly-Gel stated that it was "*considering* the retention of a damage expert" and that it needed additional information for the "*contemplated* expert." *See* **Exhibit 1** (September 14, 2018 email from Poly-Gel's counsel) (emphasis added). After months of litigation, on the day its expert reports were due, Poly-Gel was still "considering" hiring a "contemplated" expert on an essential element of its claim. It had no

proof of damages and no survey evidence of customer confusion. It therefore moved for an extension of time to provide both of these expert reports. DE 57.[2]

On November 7, 2018, Poly-Gel served its Amended Rule 26 disclosures. Poly-Gel stated that still had not computed its alleged damages and that its damage claim would be the subject of expert testimony. *See* **Exhibit 2**. Therefore, as of November 7, 2018, Poly-Gel knew it could not provide survey evidence of customer confusion (as it had withdrawn its request for an extension to designate this expert), and it still had not calculated any alleged damages.

On November 19, 2018, the Court granted Poly-Gel's request for an extension to serve its damage report and ordered Poly-Gel to serve its damage report by December 7, 2018. DE 108. This gave Poly-Gel an 81 day extension from its original deadline of September 14, 2018 to designate an expert as to damages.

On November 30, 2018, Poly-Gel filed its Answer and Counterclaims to Nail Alliance's Second Amended Complaint. Although it knew it could not provide survey evidence of customer confusion, and as of November 7, 2018, it had not calculated its alleged damages, Poly-Gel ***re-asserted*** its Lanham Act claims. DE 114.

On December 7, 2018, Poly-Gel did not serve an expert report on damages, despite the fact it had re-asserted its Lanham Act claims seven days earlier, and despite the fact the Court had extended its deadline by 81 days.

This is unreasonable litigation conduct. Poly-Gel knew it had no evidence to support its Lanham Act claims when it instituted this litigation. Nonetheless, it still filed and prosecuted the case. Months later it reasserted its Lanham Act claims, again knowing it lacked any evidence to support them. Before filing this litigation and at all times during this litigation, Poly-Gel knew it did not have evidence of trademark use. It knew it could not produce survey evidence to show

[2] Poly-Gel later withdrew its request for more time to serve a report as to survey evidence. DE 71, pg. 2.

customer confusion. It knew it had no meaningful instances of actual confusion. And it knew it had no evidence of damages. Yet instead of dropping its Lanham Act claims, it chose to re-assert them in its Answer and Counterclaim to Nail Alliance's Second Amended Complaint. The assertion and continued prosecution of claims it knew it could not support is unreasonable litigation conduct and justifies finding this case as exceptional.

**a. <u>Nail Alliance offered Poly-Gel an Offer of Judgment</u>**

Poly-Gel's conduct is even more egregious given that on September 6, 2018, Nail Alliance offered Poly-Gel an offer of judgment that would have allowed the parties to co-exist in their respective markets. As stated in **Exhibit 3**, Nail Alliance offered to narrow the scope of its trademark with the USPTO and to limit its sales to the professional nail salon market. It further offered to include distinguishing marks on the packaging and labels to ensure that the term "POLYGEL" was distinct from Poly-Gel's products and business. This offer, if accepted, not only would have ended the case, but also would have allowed the parties to co-exist and continue business with clearly defined lines as to customer base and products.

At the time Nail Alliance made this offer, Poly-Gel had no meaningful evidence of actual customer confusion or damages as evidenced by the fact that it later sought an extension of its expert deadlines eight days later. *See* DE 57; s*ee also* **Exhibit 1** (email stating Poly-Gel was still "contemplating" hiring a damage expert). But despite having no evidence to support its Lanham Act claims, Poly-Gel rejected Nail Alliance's offer of judgment.

This refusal is yet another example of unreasonable litigation tactics taken by Poly-Gel that unnecessarily increased the cost of the litigation. Poly-Gel was given the opportunity to exit the litigation and proceed with its business in a manner that ensured Nail Alliance would only sell its products to a distinct customer group that did not include Poly-Gel's customer base.

Rather than accepting this compromise, Poly-Gel chose to continue with litigation knowing it did not have any evidence to support its claims.

### 5. <u>Poly-Gel took unreasonable positions during litigation</u>

In addition to asserting a claim without any evidence to support it, and failing to re-evaluate its litigation position during the case, Poly-Gel also took specific unreasonable positions during the litigation.

In July, 2018, Nail Alliance sought to amend its pleadings to drop its affirmative claims against Poly-Gel. Poly-Gel ***<u>opposed</u>*** this request and forced Nail Alliance to file a contested motion with the Court. DE 45. Stated differently, Poly-Gel argued that Nail Alliance should be forced to continue asserting affirmative claims against Poly-Gel, even though Nail Alliance wished to drop these claims. This is a textbook example of unreasonable litigation.

In addition, as noted above, Poly-Gel sought an extension of time in which to file its expert reports. Despite being granted that leave, Poly-Gel did not file an expert report rendering the time and expense the Court and parties spent on the issue meaningless.

While Poly-Gel's motion for extension of time to file expert reports and Nail Alliance's motion for leave to amend pleadings to drop claims were pending, Nail Alliance proposed a resolution as to both issues. Nail Alliance proposed it would agree to the extension for Poly-Gel to file its damage expert report. In exchange, Poly-Gel would drop its objection to Nail Alliance's request to amend the pleadings to drop claims. Nail Alliance further stated it would agree to not reassert the trademark claims against Poly-Gel in the future. Poly-Gel rejected this offer stating it was not in the best interest of its client and forced the clients to litigate both issues. *See* **Exhibit 4**. Eventually, the Court granted Poly-Gel's request for extension and allowed Nail Alliance to drop its claims with conditions about re-asserting them at a later date. This is exactly the result that Nail Alliance proposed as a resolution to the issues.

Finally, in preparing for summary judgment, Nail Alliance asked if Poly-Gel would consent to an additional 15 pages for its briefing. Poly-Gel responded that it could not consent to an additional 15 pages. Nail Alliance then asked if Poly-Gel would consent to an additional 10 pages for the summary judgment brief, making it a 25 page limit for the brief. Nail Alliance's counsel stated he wanted to "avoid a fight over something the court will undoubtedly view as very petty and a waste of its time." *See* **Exhibit 5**. Poly-Gel still opposed. Nail Alliance then filed the necessary opposed motion with the Court. The Court granted the request and allowed both sides 25 pages for their opening summary judgment briefs. DE 137.

Whether or not the above instances individually suffice to justify a finding that this case is exceptional, taken together, and then combined with Poly-Gel's weak litigation position and refusal to drop its claims, they present a compelling case that justifies finding this case as exceptional and an award of attorney fees to Nail Alliance.

**B. <u>Courts have awarded fees in similar situations</u>**

This matter is almost identical to *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, No. 13-21604-CIV, 2017 WL 3610583 (S.D. Fla. Aug. 11, 2017), *report and recommendation adopted*, No. 13-CV-21604, 2018 WL 4409885 (S.D. Fla. June 25, 2018). A copy of the decision has been attached as **Exhibit 6**. In that matter, the court granted the defendant's motion for summary judgment and later found the case was exceptional considering the totality of circumstances surrounding the strength of Florida International's position. *Id.*, at *5. In its analysis the court noted the plaintiff's weak case and lack of evidence, recognizing that "[t]he District Court's Order…is replete with references to the Plaintiff's failure to offer evidence in support of the Plaintiff's claims." *Id.*, at *6.

Like Poly-Gel, the plaintiff also failed to provide any evidence of actual confusion beyond a *de minimis* instance. *Id.* The court also criticized the plaintiff's litigation tactics, finding them unreasonable. In particular, the court criticized the plaintiff's lack of evidence as to customer confusion, including the plaintiff's failure to produce a survey supporting its position:

> While the Plaintiff is correct in stating that actual confusion is not a prerequisite of the likelihood of confusion, the fact that the Plaintiff litigated the case with *only de minimis* evidence of actual confusion and no study of consumers related to possible confusion gives credence to the Defendant's argument that the Plaintiff litigated the case in an unreasonable manner.

*Id.*, at *7.

The court also criticized the plaintiff's failure to present evidence of damages, noting that plaintiff stipulated "there was not a single dollar of tuition that had been misdirected as a result of FNU's mark." *Id.*

The *Florida International* decision is directly on point with the facts of this case. Poly-Gel presented no evidence to support its Lanham Act claims. It had no evidence of prior trademark use. It had no evidence of actual customer confusion. It did not present survey evidence of customer confusion. Poly-Gel also knew it had not suffered lost profits from Nail Alliance's mark and failed to produce expert evidence as to any damages, despite seeking and receiving an extension to do so.

This case is not exceptional because Poly-Gel's evidence was simply insufficient. This case is exceptional because Poly-Gel had <u>*no*</u> evidence to support its claims and still forced Nail Alliance to litigate a case Poly-Gel knew it could not win. Accordingly, the Court should find this matter exceptional and award Nail Alliance its attorney fees and expert expenses.

### C. <u>The fees sought are reasonable</u>

The determination of reasonable attorney fees is "a matter that is committed to the sound discretion" of a district court judge. *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016). A district court has "great latitude to determine a reasonable hourly rate because it is intimately familiar with its local bar[,]" *Childress v. Fox Assocs., LLC Childress*, 932 F.3d 1165, 1172 (8th Cir. 2019) (quoting *Banks v. Slay*, 875 F.3d 876, 882 (8th Cir. 2017)).

In calculating an attorney fee award, a district court usually applies the lodestar method, which provides a presumptively reasonable fee amount by multiplying a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case. *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 551-52, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019). The billing rate used in the lodestar calculation is typically the attorney's normal billing rate because the normal billing rate generally reflects counsel's reputation and status (i.e., as partner, associate, or law clerk). *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 840 (9th Cir. 1982).

Attached as **Exhibit 7**, is the affidavit of Jay Heidrick concerning the fees in this matter. As demonstrated in the invoices attached to that affidavit, the work performed by the attorneys was related to the Lanham Act claims brought by Poly-Gel and performed at or below the attorney's standard hourly rates. While Poly-Gel's counterclaim did assert claims in addition to its Lanham Act claims, its entire case rose and fell with the elements required to prove its Lanham Act claims. *See*, DE 162, pgs. 24-25 (granting summary judgment as to Poly-Gel's other

claims based on failure of Lanham Act claims). Therefore all work performed in this matter is recoverable under the Lanham Act.

The rates charged by Polsinelli are also reasonable. As set forth in Exhibit 7, the rates were agreed to by Nail Alliance which is proof of reasonableness. Additionally, this matter began a much more than a simple trademark case. At the time Nail Alliance instituted it declaratory judgment action, Poly-Gel had already instituted a proceeding before the Trademark Trial and Appeal Board. Poly-Gel also instituted an action in New Jersey and originally sought to have the matter transferred to New Jersey. DE 9. The multiple prongs of this litigation made it more complicated than a traditional trademark case.

As noted in Exhibit 7, the professionals hired by Nail Alliance are qualified to handle this matter and did so addressing the multi-district front presented at the start of the case. The rates charged by Polsinelli are also reasonable. As explained in Exhibit 7, counsel for Nail Alliance is regularly retained by Nail Alliance and other clients to handle litigation in the Kansas City region. The rates charged by Polsinelli are comparable to the average rates charged by similar firms who also practice intellectual property litigation and have offices in Kansas City. *See*, Exhibit 7. The Court should also award $50,000.00 in fees incurred by Nail Alliance related to its survey expert.

In total, Nail Alliance requests the Court declare the case exceptional and award $710,936.40 in attorney fees and expert expenses.

## III. <u>CONCLUSION</u>

When it filed its original counterclaim on March 12, 2018, Poly-Gel new it had no evidence of customer confusion and no evidence of damages. When it rejected Nail Alliance's Offer of Judgment served on September 6, 2018, it knew it had no evidence of customer confusion and no evidence of damages. When it re-asserted its Lanham Act claims on November

30, 2018, Poly-Gel knew it had no evidence of customer confusion and no evidence of damages. And when it opposed Nail Alliance's Motion for Summary Judgment – as noted by the Court – Poly-Gel had no evidence of customer confusion and no evidence of damages.

Poly-Gel simply should have never asserted its Lanham Act claims and should have walked away from them as the litigation progressed. But it chose to not only assert them, but to continue prosecuting them, knowing it could not succeed. This demonstrates an unreasonable litigation position, justifying a finding that this matter is exceptional and awarding Nail Alliance its attorney fees and expert costs.

Accordingly, Nail Alliance requests the Court grant its Motion, deem this matter exceptional, award Nail Alliance $710,936.40 in attorney fees and expert costs, and grant Nail Alliance all other relief it is justly entitled.

Respectfully submitted,

By: /s/ *Jay E. Heidrick*

JAY E. HEIDRICK MO #54699
PHILLIP J. R. ZEECK MO #65298
POLSINELLI PC
900 West 48th Place
Kansas City, MO 64112
Telephone: 816-753-1000
Facsimile: 816-753-1536
jheidrick@polsinelli.com
pzeeck@polsinelli.com
*Attorneys for Plaintiff/Counterclaim Defendant Nail Alliance, LLC and Counterclaim Defendant Hand & Nail Harmony, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of October, 2019, a true and correct copy of the foregoing was electronically served on counsel for all parties properly registered to receive notice via the Court's CM/ECF system.

*/s/ Jay E. Heidrick*